UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED ELECTRONIC IDENTIFYING NUMBER **(309) 453-2551**. | ) ) ) ) ) ) | No. 4:21 MJ 3244 NCC  **FILED UNDER SEAL** |

## APPLICATION FOR A WARRANT TO AUTHORIZE USE OF A CELL-SITE SIMULATOR TO LOCATE CELLULAR DEVICE

COMES NOW the United States of America, by and through its attorneys, the United States Attorney for the Eastern District of Missouri, and Kourtney M. Bell, Assistant United States Attorney for said District, and hereby makes application to this Court for a warrant, pursuant to Federal Rule of Criminal Procedure 41, and Title 18, United States Code, Section 3123, authorizing agents/officers of the United States Marshal Service (USMS) and other authorized federal/state/local law enforcement agencies (hereinafter referred to as "investigative agency(ies)") to employ an electronic surveillance technique, that being a cell-site simulator (hereinafter "cell-site simulator") to determine the location of the cellular device assigned the following electronic identify number:

**(309) 453-2551** (hereinafter the "target cellular device").

## INTRODUCTION

1.  The undersigned applicant for the United States is an Assistant United States Attorney in the Office of the United States Attorney for the Eastern District of Missouri, and an "attorney for the Government," as defined in Fed. R. Crim. P. 1(b)(1)(B). Therefore, pursuant to Title 18, United States Code Section 3122(a)(1) and 3127(5), the undersigned may apply for a

1

Warrant authorizing a pen register and the disclosure of the telecommunication records and information as requested herein.

2. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," this warrant is designed to comply with the Pen Register Statute as well as Rule 41. *See* 18 U.S.C. §§ 3121-3127(3) & (4). Therefore, the warrant includes all the information required to be included in a pen register order. *See* 18 U.S.C. § 3123(b)(1). The information obtained through the use of a cell-site simulator does not include the contents of any communication.

3. Based on the facts set forth in the Affidavit, there is probable cause to believe that the target subject has been charged with Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g), in Case No. S1-4:21CR00131 RWS DDN. There is also probable cause to believe that locating the target cellular device used by the target subject will assist law enforcement in arresting the target subject, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

4. The United States makes this Application for a Warrant under Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Section 3123 upon a showing of probable cause. Attached to this Application and incorporated by reference as if fully set out herein is the Affidavit of Terence Monroe, TFO, USMS which alleges facts in order to show that there is probable cause to believe that information associated with the target subject and the location of the target cellular device used by the target subject will lead to the location and arrest of Freddie TILMON.

5. A cell-site simulator constitutes a "pen register" device within the meaning of Title 18, United States Code, Section 3127(3), in that it is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or

facility from which a wire or electronic communication is transmitted." The information it obtains does not include the contents of any communication. Therefore, the applicant certifies that the offense(s) under investigation by the investigative agency(ies) include but are not necessarily limited to the subject offense(s); it is believed that the target subjects of this investigation and others yet unknown are using communication facilities in furtherance of the subject offense(s); and that the information likely to be obtained from the use of a pen register device in the form of electronic investigative techniques that captures and analyzes signals emitted by cellular devices is relevant to the ongoing criminal investigation.

6.      Cellular telephones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.[1]

7.      If authorized by the warrant that is being requested and to facilitate execution, the investigative agency(ies) intend to use an investigative device or devices (identified herein as a cell-site simulator) capable of broadcasting signals that will be received by the target cellular device and receiving signals from the target cellular device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the target cellular device and thereby prompt it to send signals that include non-content information. Law enforcement may monitor the signals broadcast by the target cellular device and use that

---

[1] Unique identifiers include electronic identifying numbers associated with the target cellular device and may include the telephone service, IMSI, ESN, IMEI, or MSID number.

information to determine the target cellular device's general location, even if it is located inside a house, apartment, or other building.

8. As set forth in the Affidavit, if authorized by the warrant that is being requested the investigative agency(ies) intend to employ an electronic investigative technique, that being a cell-site simulator, to detect radio signals that are emitted automatically at the time a cellular telephone is turned on, and periodically thereafter as long as the cellular telephone remains on, regardless of whether a call is being made, to communicate with the cellular infrastructure, including cell towers. The cell-site simulator sends signals to nearby cellular devices, including the target cellular device, and in reply, nearby cellular devices will broadcast signals that include unique identifiers. These signals contain identifying numbers for the cellular telephone (*e.g.*, the telephone number, Electronic Serial Number (ESN) or International Mobile Subscriber Identification (IMSI) number). The investigative agency(ies) intend to use these the cell-site simulator to identify the location from which the target device is operating. Once the target cellular telephone's signals are identified, the strength of the signal emitted by the target cellular device can be analyzed to ascertain the general direction and location of the signal, which can assist in identifying the location from which the target cellular device is operating, including locating the target cellular device in a house, apartment, building or other private space. The investigative agency(ies) do not seek, and the cell-site simulators does not intercept, the content of any telephone calls, text messages or electronic communications.

9. The investigative agency(ies) intend to use the cell-site simulator and the electronic identifying numbers of the target cellular device at multiple locations and/or multiple times at the same location. The investigative agency(ies) may continue to use the cell-site simulator at various times during the time period authorized by the warrant being requested to determine the location of the target cellular device believed to be being used by the target subject.

10. The use of a cell-site simulator may interrupt and cause other cellular devices within its immediate vicinity to experience a brief disruption of service from the service provider. Any service disruption will be brief and temporary, and all operations will be conducted to ensure the minimal amount of interference to non-target cellular devices.

11. The device may or may not complete a connection with cellular devices determined not to be the target cellular device. Law enforcement will limit collection of information from devices other than the target cellular device. Once the investigative agency(ies) has located the target cellular device, then to the extent that any information from cellular devices other than the target cellular device was collected, law enforcement will delete that information. Absent further order of the Court, the investigative agency(ies) will make no investigative use of information concerning non-targeted cellular devices - other than distinguishing the target cellular device(s) from all other devices.

12. This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because, as described in the Affidavit, the target cellular device is currently believed to be located inside the Eastern District of Missouri. Such a belief may be based on physical surveillance, information received from third parties, reviewing business records associated with the target cellular device, cell tower records which may be disclosed pursuant to a warrant or order for the disclosure of cell site tower records under Title 18, United States Code, Section 2703(c). Pursuant to Rule 41(b)(2), law enforcement may use the cell-site simulator outside the Eastern District of Missouri provided the target cellular device is within the district when the warrant is issued. After the investigative agency(ies) determine that the target cellular device is in the Eastern District of Missouri, they will continue to monitor the location, including by use of a cell-site simulator, without geographic limitation.

## REQUEST FOR A CELL-SITE SIMULATOR

13. In light of the foregoing, the Government requests, pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Section 3123, that this Court issue a warrant authorizing the investigative agency(ies) to employ a cell-site simulator, described in the accompanying Affidavit and Attachment A, to capture and analyze radio signals, including the unique identifiers emitted by the target cellular device used by the target subject, but not the content of ay communications, to determine the location of the target cellular device for a period of forty-five (45) days, during all times of day or night, following the issuance of the Court's Warrant, as described in Attachment A. The cell-site simulator may capture information related to such cellular telephone(s) when the telephone is located in a protected space such as a residence.

14. The Government further requests that this Court's warrant authorizing the use of the cell-site simulator to identify, capture, and analyze signals emitted by the target cellular device direct the investigative agency(ies) to neither retain nor make affirmative investigative use of the data acquired beyond that necessary to determine the location of the target cellular device. Once the target cellular device is located, then to the extent that any information from a cellular device other than the target cellular device was collected, it is requested that law enforcement be directed to delete that information. It is further requested that the investigative agency(ies) may continue to use the cell-site simulator at various times during the time period authorized by the warrant being requested to determine the location of the target cellular device being used by the target subject.

15. It is necessary to use the cell-site simulator whenever the target cellular device can be found and its use may acquire signaling information when the target cellular device is located in a private space, such as a residence. The use of a cell-site simulator, as described herein, does not require a physical intrusion or trespass into any private space. Therefore, it is also requested

that the investigative agency(ies) be permitted to use a cell-site simulator at times determined by investigators, including any time, day or night.

16. The Government further requests that this Court's warrant authorizing the use of the cell-site simulator to identify, capture, and analyze signals emitted by any target cellular device, direct the investigative agency(ies) not to intercept the content of any telephone calls, text messages, or other electronic communications, made by the target cellular device(s) and that the warrant prohibit the seizure of any tangible property.

## **CONCLUSION**

17. The Government further requests, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice for six months from the end of the period of authorized surveillance. Such a period of delay is justified. The use of a cell-site simulator does not require a physical intrusion into a protected space. Moreover, a cell-site simulator is, in essence, a pen register or trap and trace device. Pursuant to 18 U.S.C. §3123(d), non-disclosure of the existence of an order for pen register or trap and trace device is permitted. A delay is further justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person(s) using the target cellular device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. See 18 U.S.C. § 3103a(b)(3).

18. Ascertaining and monitoring of the location of the target cellular device by the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

19. Finally, in light of the ongoing nature of the investigation as reflected in the attached Affidavit, the Government requests that this Applications, the Affidavit, and Warrant be sealed.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated this ___13th___ day of October, 2021.

                                                                      Respectfully submitted,

                                                                      SAYLER A. FLEMING
                                                                      United States Attorney

                                                                      *s/Kourtney M. Bell*
                                                                      KOURTNEY M. BELL, #300171 CA
                                                                      Assistant United States Attorney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED ELECTRONIC IDENTIFYING NUMBER (309) 453-2551 | ) ) ) ) ) ) | No. 4:21 MJ 3244 NCC<br><br>**FILED UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR A WARRANT TO AUTHORIZE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE

I, Terence Monroe, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic surveillance technique, that being a cell-site simulator (hereinafter "cell-site simulator"). Because collecting the information authorized by the warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," the warrant is designed to comply with the Pen Register Statute as well as Rule 41. *See* 18 U.S.C. §§ 3121-3127 (3) & (4). Therefore, the Application and Warrant include all the information required to be included in a pen register order. *See* 18 U.S.C. § 3123(b)(1).

2. I am a Police Officer with the St. Louis County Police Department and I have been so employed for seven years. I am currently assigned The Special Response Unit for the St. Louis County Police Department, and I am a Task Force Officer with the United States Marshals Service Fugitive Task Force. My responsibilities include conducting investigations into criminal street gangs, crimes where firearms are used, illegal narcotics, and weapons violations. I have conducted

numerous firearm investigations, and I have made an unquantifiable number of firearm arrest. My training and experience as a law enforcement officer include, but is not limited to, the completion of the following courses:

a. St. Louis County Police and Municipal Police Academy
b. Numerous intelligence technique and open-source investigation classes
c. Countless hours of fugitive investigation
d. 40 hours of Surveillance course
e. 40 hours of Undercover school course
f. Annual 40 Hours Courses for POST Certification

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this Affidavit, there is probable cause to believe that the target subject has been charged with Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g), in Case No. S1-4:21CR00131 RWS DDN. There is also probable cause to believe that locating the target cellular device used by the target subject will assist law enforcement in arresting the target subject, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## LOCATION TO BE SEARCHED

5. The location to be searched is:

Target cellular device assigned phone number **(309) 453-2551, with International Mobile Subscriber Identity / Electronic Serial Number 310240137514652**, whose wireless provider is **T-MOBILE**, and whose listed subscriber is UNKNOWN (hereinafter the "target cellular device").

6. One purpose of applying for this warrant is to determine the target cellular device's location. As described herein, there is reason to believe the target cellular device is currently located somewhere within this district because the Target Cellular Device's owner is known to spend most of his time in this district.

## BACKGROUND CONCERNING THE USE OF CELL-SITE SIMULATORS

7. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

8. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals

3

broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

9. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

## INVESTIGATION AND PROBABLE CAUSE

10. The United States, including United States Marshals Service, is conducting a criminal investigation regarding the whereabouts of Freddie Tilmon, Jr. (B/M, DOB: 07/19/1991) (hereinafter "TILMON"), for whom an arrest warrant is outstanding alleging commission of the **subject offenses**.

11. TILMON has an active federal arrest warrant for being a Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(1). The warrant was issued under United States District Court, Eastern District of Missouri, Docket Number: A1-4:21-00131 RWS DDN.

4

12. On July 28, 2020, TILMON was involved in an officer involved shooting with the East St. Louis Police Department. TILMON was seen waving around a firearm outside of Club Da Beno, a night club located at 6830 State Street, East. St. Louis, Illinois. When contacted by officers in the parking lot of the night club, TILMON drove his vehicle in the officers' direction, which caused the officers to discharge their service weapons. TILMON was not struck by the gunfire. Notwithstanding, TILMON made good on his attempt to escape, and officers discovered two firearms inside of his motor vehicle.

13. In August 2020, the Bureau of Alcohol, Tobacco, Firearms and Explosives opened an investigation into Tishonda Turner (hereinafter, "Turner"), TILMON's girlfriend. Agents discovered that Turner had purchased multiple firearms, ammunition, and accessories, on numerous occasions, including at least once while TILMON was present, from The Range – St. Louis West. The Range – St. Louis West is a firearm dealer with a Federal Firearms License, located in Ballwin, Missouri. It was later determined that Turner purchased both of the firearms that were involved in the East St. Louis shooting at The Range – St. Louis West on July 16, 2020. Turner was indicted as a Co-Defendant of TILMON in the March 03, 2021 superseding indictment for violating Title 18, United States Code, Section 922(a)(6).

14. On November 21, 2020, TILMON was arrested in Sandy Springs, GA, a northern suburb of Atlanta, after officers discovered three firearms inside of his vehicle. TILMON was the vehicle's driver when officers made contact with the occupants of the sedan. A trace report later revealed that one of the three recovered firearms was purchased by Turner in August 2020 at The Range – St. Louis West.

15. TILMON is an aspiring rapper and his present whereabouts are unknown to law enforcement at this time. Efforts to locate TILMON in the St. Louis metropolitan area have been met with negative results.

16. Investigative measures have revealed that TILMON's alias is "Jah Positive" and that TILMON has an Instagram account under the username: LMGJAHP. The pictures associated with this account have been positively identified by investigators as TILMON.

17. On August 11, 2021, the Honorable John M. Bodenhausen, U.S. Magistrate Judge for the Eastern District of Missouri, issued an Order authorizing the United States Marshals Service to obtain telecommunications records for, and to install, use, and maintain pen register and trap and trace devices on, TILMON'S "LMGJAHP" Instagram account.

18. As a result of the above-referenced Order, investigators learned that TILMON'S Instagram account was accessed on August 4 at 08:53:30 UTC, and August 9 at 06:05:45 UTC, 2021, from Internet Protocol version 6 (IPv6) addresses which are serviced by T-Mobile, a provider of wireless service.[1]

19. In my training and experience, when provided with a specific IPv6 address and corresponding timestamp, T-Mobile can often determine the assignment to a single, unique subscriber.

20. Pursuant to the above-referenced Order, T-Mobile identified the IPv6 addresses used at the times provided as being assigned to the following wireless subscribers: **309-453-2551 (target cellular device),** subscribed to by an unknown subscriber; and 309-404-5208, subscribed to by "TUNNEL VISION FILMZ" (it is unknown by T-Mobile's response which subscriber/number was responsible for which access).

---

[1] Every electronic device accessing the internet is assigned an IP address. An IP address may be in an a "version 4" or "version 6" format; the latter is newer and was devised due to an exhaustion of available "version 4" addresses.

21. On August 17, 2021, investigators obtained from the Grand Jury of the Eastern District of Missouri a subpoena for call records on 309-404-5208 and **309-453-2551 (target cellular device)**.

22. A comparison of the call records between 309-404-5208 and **309-453-2551 (target cellular device)** reveal over approximately 40 contact numbers "in common," indicating both numbers are in possession and use by the same individual.

23. Looking through the call records of 309-404-5208 revealed that a lot of contacts were called with area code 314, which is the area code of the St. Louis Area. Call records also revealed cellular communications to the city of East St. Louis, TILMON's hometown.

24. In addition thereto, looking through the call records of **309-453-2551 (target cellular device)** revealed the a contact listed under the name Loistine Tilmon, which a phone number of: 618-772-1656. This number is of note because the registered owner of the it has the same last name as TILMON. Also contacted was 618-491-4654, a number listed under contact name: Freddie Tilmon. This number is of note because the contact name, once again, has the same last name as TILMON and due to the fact that TILMON is known to be a junior. The number 618-882-2986 listed as Jah Positive was contacted. This number is of note because the name Jah Positive is documented as TILMON alias and stage name. Call records also show numerous contacts with the area code 314.

25. On September 9, 2021, a phone call was placed to 309-404-5208. The number rang several times and eventually went to voicemail. The voicemail could be heard saying Tunnel Films. Later the number texted back and typed, "Who this". The number then called back, and a male could be heard on the other end. This indicates the number is still in use.

26. On September 10, 2021, a phone call was placed to **309-453-2551 (target cellular device)**. The number rang several times and eventually went to voicemail. The number texted back and typed, "Who This". This indicates that this number is also still in use.

27. On October 01, 2021, the Honorable John M. Bodenhausen, U.S. Magistrate Judge, Eastern District of Missouri, signed a PLW warrant authorizing the United States Marshals Service to receive precision location pings on phone numbers: 309-453-2551 and 309-404-5208.

28. Thereafter, law enforcement has received pings regarding the whereabouts of 309-453-2551. These location pings have been as far out as 1881 meters and as close to our location, St. Louis County, as 299 meters. Based on the lack of activity regarding 309-404-5208, law enforcement has determined that the number has either been turned off or is no longer in use.

29. Law enforcement believes that TILMON is in the St. Louis Metropolitan area. Since the St. Louis Metropolitan area is a highly congested locality, where it is difficult to narrow down a ping to a specific place, the United States Marshals Service is requesting permission to deploy a Cell Site Simulator to assist with narrowing down the location of the phone so that TILMON can be safely taken into custody. In addition, I believe that ascertaining the location of the target cellular device used by the target subject through the use of an electronic investigative technique, that being a as cell-site simulator, will constitute and lead to evidence concerning the commission of the subject offense(s). For example, by ascertaining the location of the target cellular device, the investigative agency(ies) will likely be able to determine the location of the person(s) using the target cellular device and likely the target subject.

30. The investigation has demonstrated that the target cellular device is being used by Freddie TILMON who is charged with Felon in Possession of a Firearm, in violation of Title 18,

United States Code, Section 922(g), in Case No. S1-4:21CR00131 RWS DDN, and whose whereabouts are currently unknown.

31. It is critical that the investigative team be able to locate and monitor the movements of the target cellular device thereby assisting in the location and arrest of Freddie TILMON. Thus, your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

## CONCLUSION

32. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

33. In light of the foregoing, the Government requests, pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Section 3123, that this Court issue a warrant authorizing the investigative agency(ies) to employ a cell-site simulator, described in this affidavit to capture and analyze radio signals, including the unique identifiers emitted by the target cellular device used by the target subject, but not the content of any communications, to determine the location(s) of the target cellular device for a period of forty-five (45) days following the issuance of the Court's Warrant, as described in Attachment A. The cell-site simulator may capture information related to such cellular telephone(s) when the telephone is located in a protected space such as a residence.

34. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice for a period of six months from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant

may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and continue to flee from prosecution. See 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. See 18 U.S.C. § 3103a(b)(3).

35. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

36. Ascertaining and monitoring of the location of the target cellular device by the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

37. Finally, in light of the ongoing nature of the investigation as reflected in the attached Affidavit, applicant requests that the Applications, the Affidavit, and Warrant be sealed.

I state under penalty of perjury the foregoing is true and correct.

_____10/13/2021_____          _____
DATE                              TERENCE MONROE
                                  TFO, USMS


Sworn to, attested to, and affirmed before me by reliable electronic means pursuant to Federal rules of Criminal Procedure 4.1 and 41.

10/13/21                          _____
Date                              HONORABLE NOELLE C. COLLINS
                                  United States Magistrate Judge
                                  Eastern District of Missouri

# ATTACHMENT A

PURSUANT TO AN INVESTIGATION OF:

The cellular device assigned electronic identifying number **(309) 453-2551** (hereinafter the "**target cellular device** "), and individuals known as Freddie TILMON for a violations of Title 18, United States Code, Section 922(g),(hereinafter the "subject offense(s)"), the Warrant authorizes USMS and other authorized federal/state/local law enforcement agencies (hereinafter referred to as "investigative agency(ies)") to use an electronic surveillance technique, that being a cell-site simulator (hereinafter "cell-site simulator") for a period of forty-five (45) days following the issuance of this warrant i.e., October 13, 2021, to November 26, 2021, 11:59 p.m. (CT), at all times of day and night, to determine the location of the target cellular device.

This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. See 18 U.S.C. § 3103a(b)(2).

Ascertaining and monitoring of the location of the target cellular device by the methods described herein will begin within ten (10) days of the date of issuance of the Warrant and Order.

The investigative agency(ies) will make no affirmative investigative use of any identifiers collected from cellular devices other than the target cellular device(s), except to locate the target cellular device(s). Once investigators ascertain the location of the target cellular device, they will end the collection, and any information collected concerning cellular devices other than the target cellular device(s) will be deleted.